United States District Court
Southern District of Texas
**ENTERED**
June 01, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHNETTA PALLADINA, | § § | |
| *Plaintiff*, | § § § | |
| v. | § § | Case No. 4:18-CV-1550 |
| ANDREW SAUL,[1] | § § § | |
| *Defendant.* | § § | |

# MEMORANDUM AND ORDER
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Johnetta Palladina ("Plaintiff") filed this suit seeking review of the denial of disability and disability insurance benefits under Title II of the Social Security Act ("the Act"). ECF No. 1.[2] The Parties filed cross-motions for summary judgment. ECF Nos. 15, 17. Based on the briefing and the record, the Court GRANTS Plaintiff's motion and DENIES Defendant Andrew Saul's ("Commissioner") motion.

---

[1] The suit was originally filed against Nancy A. Berryhill, the then-Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul has been automatically substituted as Defendant.

[2] On July 8, 2019, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). ECF No. 13.

I.   BACKGROUND

Plaintiff is a 41-year-old woman who served in the army as a truck driver for three years. R. 132, 223. She was deployed to Iraq from 2007 to 2008, where she suffered a traumatic brain injury ("TBI") from a blast that hit a nearby building. R. 796. Plaintiff also suffers from posttraumatic stress disorder ("PTSD"), major depressive disorder, and bipolar disorder. R. 3352-55.

On December 14, 2016, Plaintiff filed an application under Title II, seeking benefits beginning on October 28, 2008[3] based on depression, TBI, insomnia, sexual trauma, drug abuse, migraines, and PTSD. R. 132-133, 206.[4] On March 22, 2017, the Commissioner denied her claims under Title II. R. 151. Plaintiff requested reconsideration and the Commissioner again denied her claims. R. 156. On July 3, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. 159. ALJ Robert Burdette conducted a hearing on October 26, 2017. R. 30-51. Thomas King, a vocational expert ("VE"), testified at the hearing. R. 48-50. Plaintiff

---

[3] At the administrative hearing, Plaintiff's attorney amended the alleged onset date to August 7, 2013—the day after an unfavorable decision on Plaintiff's previous application for benefits. R. 34-35. However, the ALJ maintained October 28, 2008 as Plaintiff's alleged onset date throughout his decision. R. 15, 17, 26.

[4] The relevant time period is October 28, 2008—Plaintiff's alleged onset date—through September 30, 2015—Plaintiff's last insured date. R. 15. The Court will consider medical evidence outside this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin*, 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000).

also testified. R. 34-48. On November 30, 2017, the ALJ denied Plaintiff's application for benefits.[5] R. 15-26.

On January 24, 2018, Plaintiff requested the Appeals Council to review the ALJ's decision. R. 204. On March 6, 2018, the Appeals Council denied Plaintiff's request for review. R. 1-5; *see Sims v. Apfel*, 530 U.S. 103, 106 (2000) (explaining that when the Appeals Council denies the request for review, the ALJ's opinion becomes the final decision).

On May 11, 2018, Plaintiff filed this civil action. ECF No. 1. In this appeal, Plaintiff asserts that the ALJ erred in evaluating the requirements of Listing 12.04 for depressive, bipolar, and related disorders. ECF No. 16 at 7-9.

---

[5] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ here determined Plaintiff was not disabled at Step Five. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant time period. R. 17. At Step Two, the ALJ found Plaintiff has the following medically determinable and severe impairments: degenerative disc disease, bipolar disorder, PTSD, major depressive disorder, and insomnia. R. 17. The ALJ also found that Plaintiff was obese and had hypertension, but that these impairments were not severe. R. 17. At Step Three, the ALJ found Plaintiff's impairments or combination of impairments do not rise to the level of severity of impairments in the listings associated with depressive, bipolar, and related disorders (Listing 12.04) or trauma and stressor-related disorders (Listing 12.15). R. 18-19. The ALJ found Plaintiff has the Residual Functional Capacity ("RFC") to perform light work, particularly that Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently; stand, walk, or sit for six hours in an eight-hour workday; and occasionally stoop, kneel, crouch, and crawl. R. 19. However, Plaintiff cannot climb ropes, ladders, or scaffolds. R. 19. Additionally, Plaintiff is limited to performing work with simple instructions and can tolerate only occasional interaction with the public and co-workers. R. 19. At Step Four, the ALJ found that Plaintiff is not capable of performing her past relevant work as a truck driver. R. 25. However, at Step Five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, such as office helper, shipping weigher, and photocopy operator, and therefore Plaintiff is not disabled as defined under the Act. R. 26.

## II. STANDARD OF REVIEW

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing. The findings of the Commissioner … as to any facts, if supported by substantial evidence, shall be conclusive[.]

*Id.*

Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id.*; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

"The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Thornhill v. Colvin*, No.

14-CV-335, 2015 WL 232844, at *3 (N.D. Tex. Jan. 16, 2015) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id*. (quotations omitted). The "substantial evidence" standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822-23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823.

### III. ANALYSIS OF PLAINTIFF'S CHALLENGES TO THE ALJ'S DECISION

Plaintiff argues the ALJ erred in finding she does not meet the "paragraph B" criteria of Listing 12.04 for depressive, bipolar, and related disorders because he improperly weighed opinion evidence and disregarded other events in Plaintiff's medical history, such as an attempted suicide in 2014. ECF No. 16 at 7-9. Commissioner argues that Plaintiff's medical records contain "mostly normal" mental examinations and that Plaintiff's pursuit of school and vocational

rehabilitation during the relevant time period demonstrate she is not disabled. ECF No. 17 at 4-6. The Court agrees with Plaintiff and finds the ALJ's paragraph B determination unsupported by substantial evidence because it does not reflect a reading of the record as a whole. Moreover, in asserting Plaintiff's mental examinations are "mostly normal," Commissioner misconstrues the record.[6]

### A. The "Paragraph B" Criteria For Mental Impairments.

In evaluating a claimant's mental impairment, the ALJ must follow the procedure set forth in 20 C.F.R. § 404.1520a. Section 404.1520a requires an ALJ to evaluate the impact of a claimant's mental impairment on four broad functional areas, known as the "paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). At Step Two in the evaluation process, the paragraph B criteria are used to determine whether a claimant has a severe mental impairment. *Id.* § 404.1520a(d). At Step Three, the paragraph B criteria are used to determine whether a claimant meets a listing and can therefore be presumed disabled. 20 C.F.R.

---

[6] Plaintiff also argues the ALJ erred in failing to consider the Department of Veterans Affairs a treating source. ECF No. 16 at 5-7. Given that the Court finds remand appropriate, it need not reach this argument. "Plaintiff may raise any appropriate arguments before the Commissioner on remand." *Littleton v. Comm'r of Soc. Sec.*, No. 16-CV-14, 2017 WL 1397128, at *6 (S.D. Tex. Feb. 22, 2017); *see also Miller v. Saul*, No. 18-CV-1519, 2019 WL 5010621, at *9 (S.D. Tex. Aug. 12, 2019) (addressing only one argument that required remand), *report and recommendation adopted*, 2019 WL 4994530 (Oct. 7, 2019).

Pt. 404, Subpt. P, App. 1 § 12.00(A); *see Stovall v. Colvin*, No. 16-CV-17475, 2017 WL 8785560, at *6 (E.D. La. Sept. 22, 2017), *report and recommendation adopted*, 2018 WL 1726259 (Apr. 10, 2018). A claimant meets the paragraph B criteria of Listing 12.04 by exhibiting extreme limitation[7] in one area or marked limitation[8] in two areas of mental functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04.

Here, the ALJ found that Plaintiff's bipolar and major depressive disorders are severe but do not meet the requirements for Listing 12.04. R. 17-19. In evaluating the paragraph B criteria, the ALJ found Plaintiff has: (1) mild limitation in understanding, remembering, or applying information; (2) mild limitation in interacting with others; (3) moderate limitation in concentrating, persisting, or maintaining pace; and (4) moderate limitation in adapting or managing herself. R. 18-19. Because Plaintiff did not have at least two marked limitations or one extreme limitation under the ALJ's analysis, she did not meet the requirements of paragraph B. R. 19.

---

[7] An extreme limitation exists when a claimant is unable to function independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F). This "represents a degree of limitation that is incompatible with the ability to do any gainful activity." 20 C.F.R. § 404.1520a

[8] A marked limitation exists when a claimant is seriously limited in functioning independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F).

### B. The ALJ's Paragraph B Findings Are Not Supported By Substantial Evidence.

Although "the threshold for [substantial evidence] is not high," *Biestek*, 139 S. Ct. at 1154, the substantial evidence test "does not involve a simple search of the record for isolated bits of evidence which support the [ALJ's] decision." *Singletary*, 798 F.2d at 823. Instead, the court must consider the record as a whole. *Id.* "The [appropriate inquiry] is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Loza*, 219 F.3d at 393. Similarly, in evaluating a plaintiff's claim, "the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Id.*

The ALJ's paragraph B evaluation here does not reflect a reading of the record as a whole, but instead involves the picking and choosing of evidence. Plaintiff's medical records, which consist of over 4,000 pages of evaluations and treatment notes from the Department of Veterans Affairs ("VA"), provide a complete picture of Plaintiff's mental health struggles since returning from deployment in Iraq. Yet, the ALJ essentially chose one piece of evidence to support his findings for each of the four paragraph B criteria: (1) a set of two brief outpatient check-ins on January 16 and 17, 2013 to determine Plaintiff has mild limitation in understanding, remembering, or applying information; (2) a consultative exam performed by Megan Houston ("Dr. Houston") on October 30, 2014 to determine Plaintiff has mild

8

limitation in interacting with others;[9] (3) an exam performed by Leigh Bishop ("Dr. Bishop") on May 5, 2017 to determine Plaintiff has moderate limitation in concentrating, persisting, or maintaining pace; and (4) an evaluation by a licensed social worker, Thach Ho ("LCSW Ho"), on September 28, 2016 to determine Plaintiff has moderate limitation in adapting or managing herself. R. 18-19.

None of this evidence, however, is representative of the medical record as a whole, nor could any of it lead a reasonable mind to determine Plaintiff does not meet the paragraph B criteria. First, in discussing the nurse outpatient visits of January 16 and 17, 2013, the ALJ noted that Plaintiff had no suicidal ideation. R. 18. Those two records may have accurately reflected Plaintiff's mental outlook on those particular days, but the ALJ ignores the records establishing that Plaintiff attempted suicide at least six times since returning from her deployment in Iraq, resulting in two involuntary commitments to the hospital.[10] The ALJ's evaluation also fails to

---

[9] Although the ALJ relied on Dr. Houston's opinion to determine Plaintiff's ability to interact with others, he later discounted it in his analysis of Plaintiff's RFC. R. 24. The ALJ gave no explanation of why he accepted Dr. Houston's opinion at Step Three but not in the RFC analysis. This inconsistency constitutes error. *See Jorgensen v. Berryhill*, No. 15-CV-889, 2017 WL 785805, at *15-16 (N.D. Tex. Feb. 9, 2017) (finding error when the ALJ's decision was internally inconsistent in determining the weight given to opinions of medical professionals), *report and recommendation adopted*, 2017 WL 770617 (Feb. 28, 2017).

[10] R. 2797 (July 22, 2011) (psychosocial assessment noting four earlier suicide attempts); R. 2480 (Jan. 18, 2014) (ER visit due to suicidal ideations after running out of antipsychotic medication, noting Plaintiff was hospitalized from December 30, 2013 to January 6, 2014 for attempted suicide); R. 2348 (Feb. 25, 2014) (4-day involuntary hospitalization from February 22 to 25, 2014 for attempted suicide).

mention that the VA flagged Plaintiff as a high risk for suicide for over a year[11] or that Plaintiff was prescribed numerous medications to reduce her depression, hallucinations, and suicidal thoughts.[12] The cursory statement that Plaintiff was not suffering from suicidal ideations in January 2013, therefore, is not a fair representation of her medical records.

Second, the ALJ's use of Dr. Bishop's May 5, 2017 evaluation to determine Plaintiff's ability to concentrate, persist, or maintain pace is likewise problematic because it does not accurately reflect the record as a whole. As the ALJ noted, Dr. Bishop diagnosed Plaintiff with PTSD and depression but found that Plaintiff's mood was euthymic, affect appropriate, and attention and concentration intact. R. 19, 4390. The ALJ gave significant weight to this opinion because it was more recent than others in Plaintiff's records. R. 24. However, the record contains an even more recent opinion from Dr. Bishop—dated August 4, 2017—that belies the conclusion the ALJ drew from the May 5 evaluation. In the August 4 evaluation,

---

[11] R. 2324 (Mar. 7, 2014) (initiating high risk suicide flag due to Plaintiff's multiple suicide attempts and psychosocial stressors including homelessness, financial problems, interpersonal problems, and poor coping skills); R. 1974 (May 8, 2015) (removing high risk flag).

[12] R. 2368 (Feb. 25, 2014) (PTSD evaluation noting Plaintiff had been prescribed Trazodone, Lexapro, Zoloft, Abilify, Thorazine, Elavil, Lithium, Bupropion, and Risperdal, but that Plaintiff was not on medication when she attempted suicide in February 2014 because she was pregnant). *See also* R. 2826 (June 15, 2011) (mental health outpatient record noting Plaintiff hears noises of bombs and whistling of rockets since returning from deployment); R. 2369 (Feb. 25, 2014) (PTSD evaluation noting Plaintiff frequently hears the words "incoming, incoming" which were shouted on the radio in Iraq when a nearby building was attacked).

Dr. Bishop found Plaintiff's mood to be moderately depressed instead of euthymic and her affect to be moderately constricted instead of appropriate. R. 4380. Dr. Bishop also noted that Plaintiff complained of difficulty with concentration and attention and increased Plaintiff's medications to remedy these symptoms. R. 4380, 4382. Yet, the ALJ makes no mention of this evaluation in his paragraph B analysis, and the Court cannot conclude the May 5 evaluation is representative of Plaintiff's ability to concentrate, persist, or maintain pace.

Finally, the ALJ's reliance on LCSW Ho's September 28, 2016 evaluation to determine that Plaintiff has moderate limitation in adapting or managing herself also does not reflect the record as a whole. LCSW Ho found Plaintiff was in a stable mood, was actively seeking employment, had just moved into a new home, and had been clean for over a year. R. 19, 1631-34. However, during most of the relevant time period, Plaintiff struggled with homelessness,[13] substance abuse,[14] and mood

---

[13] R. 1496 (Aug. 3, 2011) (noting Plaintiff had been homeless for three years and that she had entered transitional housing through the VA on May 13, 2011); R. 1433 (Mar. 6, 2014) (records of Plaintiff joining Domiciliary Care for Homeless Veterans, a VA program designed to prepare homeless veterans with mental illness for independent living, as Plaintiff was found to require "the structure and support of a residential treatment environment").

[14] R. 1459 (Feb. 22, 2013) (neuropsychology consult noting that Plaintiff began using drugs in 2009 and spent 16 months in jail on drug-related charges); R. 338 (Dec. 29, 2013) (report from Plaintiff's brother that Plaintiff had been using drugs on a daily basis, collected after Plaintiff had been picked up by the police for exhibiting signs of psychosis and disorganized behavior in public); R. 2305 (Mar. 18, 2014) (mental health case management note indicating Plaintiff admitted to using drugs while pregnant); R. 1944 (June 8, 2015) (record of Plaintiff joining substance abuse treatment program); R. 1940 (June 9, 2015) (record that VA social workers made a report to Child Protective Services because Plaintiff used illegal drugs when 9-month-old daughter was present).

11

disorders.[15] As Commissioner points out, Plaintiff attended school after returning from deployment; however, she experienced significant academic difficulty and has not been able to finish her degree.[16] Numerous healthcare professionals have noted issues in Plaintiff's mood and ability to adapt,[17] and Plaintiff herself reported that her daughter helps her with daily activities such as taking medication and handling

---

[15] R. 3322-27 (Oct. 21, 2009) (trauma-recovery plan addressing Plaintiff's PTSD, depressive/bipolar disorder, TBI, and substance abuse, recommending medication, therapy, and inpatient treatment); R. 2873-3306 (Jan. 4 to 28, 2010) (records from Women's Inpatient Specialty Environment of Recovery, a VA program providing intensive residential treatment for PTSD and mood disorders); R. 2089 (Nov. 17, 2014) (mental health assessment note indicating Plaintiff was referred to the Homeless-Assertive Community Treatment Team with the VA due to her substance abuse, pregnancy, and high risk for suicide).

[16] R. 1498 (Aug. 3, 2011) (speech pathology report indicating Plaintiff's academic history was variable and recommending treatment to address time management, organization, and reading comprehension); R. 1457 (Feb. 15, 2013) (neuropsychology rehab notes indicating Plaintiff struggles in school); R. 1458-63 (Feb. 22, 2013) (neuropsychological evaluation indicating Plaintiff complained of memory problems affecting schoolwork, noting Plaintiff had to stop nursing program because she had significant difficulty with her classes, and finding Plaintiff's mood symptoms "could viably interfere to some degree with [her] current academic and occupational endeavors"); R. 2366 (Feb. 25, 2014) (PTSD evaluation noting Plaintiff had difficulty with academic work at Houston Community College and Lonestar College due to depression, anxiety, and concentration problems); R. 2074 (Nov. 25, 2014) (mental health note indicating Plaintiff had stopped attending college classes); R. 1853 (Sept. 29, 2015) (mental health home visit note indicating Plaintiff was attending online classes but would likely have to take an incomplete because she could not keep up with assignments).

[17] R. 1458-63 (Feb. 22, 2013) (neuropsychological evaluation noting Plaintiff reported memory and concentration problems that, although did not yet prevent her from performing all activities of daily life, did interfere with activities such as cooking); R. 2361 (Feb. 25, 2014) (psychological evaluation determining that Plaintiff's mental diagnoses caused her to have "occupational and social impairment with reduced reliability and productivity"); R. 353-57 (Oct. 30, 2014) (consultative psychological evaluation by Dr. Houston indicating Plaintiff reported difficulty concentrating and concluding that Plaintiff's symptoms "appear to be pervasive and may be causing impairment in her occupational and social functioning"); R. 2074-81 (Nov. 25, 2014) (mental health treatment notes by Dr. Sara Allison indicating Plaintiff had poor concentration, diminished energy, depressed mood, and mildly dysphoric affect); R. 1998 (Apr. 8, 2015) (case management record by social worker Sandra Posada, who met with Plaintiff on an intensive basis during the relevant period, noting Plaintiff's depressed mood and variable insight and judgment).

bills.[18] The single evaluation from LCSW Ho is not representative of Plaintiff's ability to manage herself.[19]

The ALJ, therefore, ignored Plaintiff's extensive history of mental health issues and attempted suicides, and his determination that Plaintiff does not meet the paragraph B criteria is not one a reasonable mind could accept based on a reading of the record as a whole.

### C. Commissioner's Citations To "Mostly Normal" Mental Status Examinations Do Not Meet The Substantial Evidence Threshold.

Commissioner asserts that Plaintiff's medical records contain "mostly normal" mental status examinations, citing to over 150 medical record entries without further explanation. ECF No. 17 at 5. Commissioner's argument is contradicted by the record.

---

[18] R. 256-63 (Feb. 22, 2017) (Function Report filled out by Plaintiff). *See also* R. 354 (Oct. 30, 2014) (Dr. Houston's evaluation indicating Plaintiff reported her daughter handles household finances and grocery shopping).

[19] In addition, LCSW Ho and Dr. Bishop's evaluations took place well after Plaintiff's last insured date of September 30, 2015. While medical evidence after a claimant's last insured date can be relevant to a disability determination, this is only true to the extent it "bear[s] upon the severity of the claimant's condition before the expiration of his or her insured status." *Loza*, 219 F.3d at 396 (quotations omitted); *see also Abney v. Astrue*, No. 07-CV-394, 2008 WL 2074011, at *6 (E.D. Ky. May 13, 2008) ("Evidence of disability obtained after the expiration of insured status is generally of little probative value. Record medical evidence from after a claimant's date last insured is only relevant to a disability determination where the evidence relates back to the claimant's limitations prior to the date last insured.") (quotations and citations omitted). Neither Dr. Bishop nor LCSW Ho's evaluations do so. Moreover, LCSW Ho is not a treating source but instead is considered an "other medical source," whose opinion should be considered and weighed in accordance with SSR 06-03p. *See Jorgensen*, 2017 WL 785805, at *13. The ALJ failed to do so.

First, more than 20% of Commissioner's citations are to duplicates of the medical records. For example, Commissioner cites twice to the same September 29, 2015 home visit by VA social workers, which appears in the record on pages 1851-52 and pages 3846-47. The same is true for the last several dozen of Commissioner's citations.[20] This practice is, at best, careless. It creates the impression that more records support his argument than in fact exist.

Second, a significant portion of the records Commissioner cited, when understood in context, contradict the assertion that Plaintiff's mental health was normal. For example, several citations are records from Plaintiff's 4-day involuntary

---

[20] *See* R. 1865-69 & 3860-62 (cited separately by Commissioner, but both containing records of Sept. 16, 2015 home visit); R. 1874 & 3869 (Sept. 4, 2015 medication management visit); R. 1881-82 & 3876-77 (Aug. 26, 2015 home visit); R. 1894-95 & 3889-90 (July 31, 2015 medication management visit); R. 1914-15 & 3909-10 (June 26, 2015 medication management visit); R. 1920 & 3915 (June 19, 2015 medication management visit); R. 1951 & 3946 (June 8, 2015 mental health visit); R. 1957-58 & 3952-53 (June 4, 2015 home visit); R. 1977-78 & 3972-73 (May 5, 2015 home visit); R. 1985 & 3980 (Apr. 24, 2015 mental health visit); R. 1997-98 & 3992-93 (Apr. 8, 2015 home visit); R. 2003-04 & 3998-99 (Mar. 27, 2015 medication management visit); R. 2008-09 & 4003-04 (Mar. 4, 2015 medication management visit); R. 2013-14 & 4008-09 (Feb. 26, 2015 home visit); R. 2019 & 4014 (Feb. 5, 2015 medication management visit); R. 2024-25 & 4019-20 (Feb. 5, 2015 mental health visit); R. 2031 & 4026 (Jan. 29, 2015 medication management visit); R. 2047 & 4042 (Jan. 12, 2015 medication management visit); R. 2053-54 & 4048-49 (Jan. 9, 2015 medication management visit); R. 2068 & 4063 (Dec. 5, 2014 medication management visit); R. 2075 & 4070 (Nov. 25, 2014 mental health visit); R. 2085 & 4080 (Nov. 21, 2014 medication management visit); R. 2093-94 & 4088-89 (Nov. 17, 2014 psychosocial assessment); R. 2096 & 4091 (Nov. 17, 2014 home visit); R. 2155-57 & 4150-52 (Sept. 7, 2014 physical assessment); R. 2241-42 & 4236-37 (May 28, 2014 home visit); R. 2270-71 & 4265-66 (Apr. 17, 2014 home visit); R. 2283-84 & 4278-79 (Mar. 31, 2014 home visit); R. 2304-05 & 4298-99 (Mar. 18, 2014 home visit); R. 2311-12 & 4306-07 (Mar. 14, 2014 home visit); R. 2330 & 4325 (Mar. 5, 2014 mental health visit); R. 2347 & 4342 (Feb. 25, 2014 nursing discharge summary); R. 2349 & 4344 (Feb. 25, 2014 inpatient discharge note); R. 2357 & 4352 (Feb. 25, 2014 nurse note). *See also* R. 1500-05 & 2790-95 (July 22, 2011 TBI consult).

hospitalization in 2014 for attempted suicide,[21] during which she displayed "splitting behavior" that was attributed to "maladaptive personality traits exacerbated by substance abuse."[22] Similarly, over fifty citations are entries from Plaintiff's participation in a 3-week intensive residential therapy program in 2010 for veterans with PTSD and mood disorders.[23] These records also contain notes that Plaintiff

---

[21] *See* R. 2346-47 (Feb. 25, 2014 nursing discharge summary); R. 2349 (Feb. 25, 2014 inpatient discharge note); R. 2357 (Feb. 25, 2014 nurse note); R. 2382-83 (Feb. 25, 2014 nurse note); R. 2388-89 (Feb. 24, 2014 nurse note); R. 2397 (Feb. 24, 2014 inpatient note); R. 2402 (Feb. 24, 2014 nurse note); R. 2410 (Feb. 24, 2014 nurse note); R. 2416 (Feb. 23, 2014 nurse note); R. 2420 (Feb. 23, 2014 inpatient note); R. 2423 (Feb. 23, 2014 nurse note).

[22] R. 2348 (Feb. 25, 2014 discharge note). *See also* R. 2382 (Feb. 25, 2014 nurse note) (noting Plaintiff exhibited demanding behavior, had a "loud verbal outburst" regarding her medication, and had illogical thought process); R. 2410 (Feb. 24, 2014 nurse note) (noting Plaintiff's affect was depressed, memory poor, and thought process circumstantial and indicating Plaintiff may have been experiencing hallucinations); R. 2416 (Feb. 23, 2014 nurse note) (same); R. 2423 (Feb. 23, 2014 nurse note) (indicating Plaintiff's mood was blunted and depressed, thought content was delusional, and insight and judgment were poor, as well indicating Plaintiff was experiencing "acute exacerbation of psychotic symptoms").

[23] *See* R. 2890-91 (Jan. 27, 2010 inpatient discharge note); R. 2900 (Jan. 27, 2010 nurse note); R. 2902 (Jan. 26, 2010 nurse note); R. 2910 (Jan. 26, 2010 nurse note); R. 2916 (Jan. 26, 2010 nurse note); R. 2919 (Jan. 25, 2010 nurse note); R. 2928 (Jan. 25, 2010 interdisciplinary case review); R. 2933 (Jan. 25, 2010 nurse note); R. 2939-40 (Jan. 25, 2010 nurse note); R. 2949-51 (Jan. 24, 2010 nurse note); R. 2958-59 (Jan. 23, 2010 nurse note); R. 2961 (Jan. 22, 2010 nurse note); R. 2966 (Jan. 22, 2010 nurse note); R. 2969 (Jan. 22, 2010 inpatient note); R. 2976-77 (Jan. 22, 2010 nurse note); R. 2989 (Jan. 21, 2010 nurse note); R. 2991-92 (Jan. 21, 2010 interdisciplinary case review); R. 2996-97 (Jan. 21, 2010 group counseling note); R. 2999-3000 (Jan. 20, 2010 nurse note); R. 3004 (Jan. 20, 2010 inpatient note); R. 3010 (Jan. 20, 2010 nurse note); R. 3014-15 (Jan. 20, 2010 nurse note); R. 3019 (Jan. 19, 2010 nurse note); R. 3021 (Jan. 19, 2010 group counseling note); R. 3024 (Jan. 19, 2010 nurse note); R. 3029-30 (Jan. 19, 2010 interdisciplinary case review); R. 3034 (Jan. 19, 2010 nurse note); R. 3038 (Jan. 18, 2010 nurse note); R. 3042 (Jan. 18, 2010 nurse note); R. 3045-46 (Jan. 18, 2010 inpatient note); R. 3047 (Jan. 18, 2010 nurse note); R. 3049-50 (Jan. 18, 2010 nurse note); R. 3056 (Jan. 17, 2010 nurse note); R. 3060 (Jan. 17, 2010 nurse note); R. 3065 (Jan. 16, 2010 nurse note); R. 3070 (Jan. 16, 2010 inpatient note); R. 3072 (Jan. 16, 2010 nurse note); R. 3074 (Jan. 15, 2010 nurse note); R. 3078-79 (Jan. 15, 2010 inpatient note); R. 3084-85 (Jan. 15, 2010 nurse note); R. 3091 (Jan. 15, 2010 nurse note); R. 3095 (Jan. 14, 2010 nurse note); R. 3100-01 (Jan. 14, 2010 interdisciplinary case note); R. 3106 (Jan. 14, 2010 nurse note); R. 3110-11 (Jan. 14, 2010 nurse note); R. 3113 (Jan. 13,

exhibited anxious and defiant behavior, suffered from "severe interpersonal difficulties," and experienced dysphoria.[24] Thus, these records contradict Commissioner's contention of "mostly normal" examinations.

Third, most of the remaining citations are home visits performed by social workers as part of the VA's housing program or brief check-ins by nurses regarding Plaintiff's medication.[25] They are generally short determinations of how Plaintiff's mental state appeared on a given day, and many actually contain observations that certain aspects of Plaintiff's mental health were not "normal" at that time. For example, in a home visit conducted on March 14, 2014, the social worker noted Plaintiff's mood was depressed, judgment and insight impaired, and affect

---

2010 nurse note); R. 3117-18 (Jan. 13, 2010 inpatient note); R. 3129-30 (Jan. 13, 2010 nurse note); R. 3139 (Jan. 12, 2010 nurse note); R. 3145 (Jan. 12, 2010 nurse note); R. 3154-55 (Jan. 11, 2010 nurse note); R. 3163 (Jan. 11, 2010 interdisciplinary case review); R. 3171 (Jan. 11, 2010 nurse note); R. 3175-77 (Jan. 11, 2010 nurse note); R. 3184 (Jan. 10, 2010 inpatient note); R. 3186 (Jan. 10, 2010 nurse note); R. 3188 (Jan. 9, 2010 nurse note); R. 3193-94 (Jan. 9, 2010 nurse note); R. 3224-25 (Jan. 7, 2010 nurse note); R. 3233 (Jan. 7, 2010 nurse note); R. 3241 (Jan. 6, 2010 inpatient note); R. 3245 (Jan. 6, 2010 nurse note); R. 3254 (Jan. 6, 2010 nurse note); R. 3256-57 (Jan. 5, 2010 nurse note); R. 3267 (Jan. 5, 2010 inpatient note); R. 3281-82 (Jan. 5, 2010 nurse note); R. 3289 (Jan. 4, 2010 inpatient admission evaluation).

[24] R. 2949 (Jan. 24, 2010 nurse note) (noting Plaintiff's affect was blunted and flat and her mood was dysphoric); R. 2969 (Jan. 22, 2010 inpatient note) (noting Plaintiff's severe interpersonal difficulties and PTSD, depression, and substance abuse diagnoses); R. 3014-15 (Jan. 20, 2010 nurse note) (noting Plaintiff exhibited anxious and defiant behavior, irritable mood, and flat and blunted affect); R. 3019 (Jan. 19, 2010 nurse note) (noting Plaintiff's anxious and defiant behavior and irritable mood); R. 3074 (Jan. 15, 2010 nurse note) (noting Plaintiff's affect was anxious and behavior was anxious and defiant); R. 3085 (Jan. 15, 2010 nurse note) (same).

[25] *See, e.g.*, R. 1957-58 (June 4, 2015 home visit); R. 2068 (Dec. 5, 2014 medication visit).

16

flat/blunted/constricted, sad, tearful, worried, frustrated, and shameful.[26] The fact the VA found it necessary to meet with Plaintiff on such a frequent basis—at least every two weeks for a period of several years—also demonstrates the intense mental health support Plaintiff needed when returning from deployment.

The more detailed evaluations Commissioner cited also cannot be characterized as "normal," as Commissioner suggests. For example, Commissioner cites to a neuropsychology consult performed February 22, 2013 as evidence of a normal exam; to the contrary, the record indicates that Plaintiff was experiencing severe levels of emotional distress, memory and concentration issues, increased anger and irritability "without any known cause or precipitating event," and episodes of heightened or blunted emotionality.[27] Similarly, Commissioner cites to a psychiatric evaluation from January 18, 2014 as evidence of a normal examination.

---

[26] R. 2311-12. *See also* R. 1851-52 (Sept. 29, 2015 home visit) (noting Plaintiff's motor activity was slow, affect flat/blunted/constricted, sad, worried, and suspicious, mood depressed, and judgment and insight variable); R. 1865-67 (Sept. 16, 2015 home visit) (noting Plaintiff's mood was depressed, affect flat/blunted/constricted and frustrated, judgment variable, and insight impaired); R. 1881-82 (Aug. 26, 2015 home visit) (noting Plaintiff's mood was "less depressed," affect flat/blunted/constricted, and judgment and insight variable); R. 1997-98 (Apr. 8, 2015 home visit) (noting Plaintiff's mood was depressed, affect flat/blunted/constricted, and judgment and insight variable); R. 2031 (Jan. 29, 2015 medication visit) (noting Plaintiff's mood was slightly irritable and insight and judgment variable); R. 2093-94 (Nov. 17, 2014 psychosocial assessment) (noting Plaintiff's mood was "less depressed," affect flat/blunted/constricted, and insight variable); R. 2241-43 (May 28, 2014 home visit) (noting Plaintiff's insight and judgment were variable); R. 2270-71 (Apr. 17, 2014 home visit) (noting Plaintiff's affect was anxious and frustrated, mood elevated, and judgment and insight impaired); R. 2283-84 (Mar. 31, 2014 home visit) (noting Plaintiff's affect was frustrated, mood "less depressed," thought process fragmented, and judgment and insight variable).

[27] R. 1457-63.

17

Quite the opposite, this record indicates Plaintiff had been hospitalized for attempted suicide a few weeks earlier, during which she had "auditory hallucinations telling her to kill herself by setting herself on fire or throwing herself off the freeway," and was still suffering from increased depression, irritability, agitation, and passive suicidal ideation.[28]

Therefore, while Plaintiff's medical records may contain sporadic examinations indicating her mood or behavior appeared "normal" on a given day, upon closer examination, the records overwhelmingly establish that Plaintiff suffered from severe mental illness that culminated in six suicide attempts over the relevant time period. Commissioner's citations meant to convince the Court otherwise are unavailing.

Moreover, the ALJ did not reference any of the records from Commissioner's long string of citations in his paragraph B analysis, nor did he conclude that Plaintiff's mental examinations were "mostly normal." Instead, he found Plaintiff did not have at least two marked or one extreme paragraph B limitation. R. 18-19. Because a court "may affirm only on the grounds that the Commissioner stated for

---

[28] R. 2480-86. *See also* R. 2825-29 (June 15, 2011 mental health visit) (noting Plaintiff has heard bombs and rockets since returning from deployment and recommending TBI evaluation); R. 1500-05 (July 22, 2011 TBI consult) (noting Plaintiff suffered from severe anxiety, depression, irritability, and poor frustration tolerance and diagnosing Plaintiff with TBI); R. 1944-48 (June 8, 2015 substance abuse treatment evaluation) (noting that, although Plaintiff presented as euthymic, she was anxious, admitted to using drugs while pregnant, and had mild to moderate emotional or behavioral conditions that could detract from treatment).

[the] decision," the Court cannot affirm the ALJ's decision based on Commissioner's citations. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014).

### D. The Case Must Be Remanded For Re-evaluation Of Plaintiff's Claims.

While the substantial evidence test may not be a high bar, the evidence in this case fails to clear even that low threshold. The ALJ consistently relied on evidence that did not reflect Plaintiff's mental health records as a whole, and therefore, the ALJ's Step Three determination is not based on substantial evidence. *See, e.g.*, *Miller v. Saul*, No. 18-CV-1519, 2019 WL 5010621, at *10 (S.D. Tex. Aug. 12, 2019) (finding the ALJ's determination that plaintiff did not meet Listing 12.04 not supported by substantial evidence, in part because the ALJ "cherry-picked" medical opinions over the course of four years of treatment notes), *report and recommendation adopted*, 2019 WL 4994530 (Oct. 7, 2019); *Green v. U.S. Comm'r, Soc. Sec. Admin.*, No. 16-CV-1227, 2017 WL 7035682, at *10 (W.D. La. Dec. 22, 2017) (determining the ALJ's paragraph B findings were not supported by substantial evidence because he ignored evidence showing plaintiff could not care for himself and failed to explain how plaintiff's psychiatric hospitalizations were considered in the analysis), *report and recommendation adopted*, 2018 WL 505397 (Jan. 22, 2018); *Carter v. Astrue*, No. 07-CV-1731, 2009 WL 1203355, at *6-7 (W.D. La. May 1, 2009) (determining the ALJ's finding that plaintiff did not meet a mental health listing not supported by substantial evidence because the ALJ picked

19

and chose evidence to support his conclusion that plaintiff could care for himself). The case must be remanded.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's motion for summary judgment, ECF No. 15, and DENIES Commissioner's motion for summary judgment, ECF No. 17. The Commissioner's determination that the Plaintiff is not disabled is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

Signed on June 1, 2020, at Houston, Texas.

                                           *Dena Palermo*
                                           Dena Hanovice Palermo
                                           United States Magistrate Judge